In re BURLINGTON TENNIS
ASSOCIATES, Debtor.

David M. FARRELL, Plaintiff,

v.

BURLINGTON TENNIS ASSOCIATES,
Defendant.

Bankruptcy No. 82–189.
Adv. No. 82–0168.

United States Bankruptcy Court,
D. Vermont.

July 22, 1983.

See also 34 B.R. 836, 34 B.R. 839.

Norman Williams, Burlington, Vt., for David Farrell.

Charles H. Gibbs, Jr., Woodstock, Vt., for debtor.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

On October 1, 1982 David M. Farrell (Farrell) filed a request under Bankruptcy Code (Code) section 362(d) for relief from the automatic stay of Code section 362(a). With the consent of the parties the hearing on the request was continued from time to time and the final hearing was held on June 30, 1983. Farrell seeks relief in order to bring an action in ejectment against the Debtor, Burlington Tennis Associates (BTA), which entity is Farrell's lessee. Farrell also filed a request under Code section 363(e) for adequate protection of his interest in the premises leased to be BTA.

## FACTS

In 1973 Farrell as lessor conveyed to Cross-Court Burlington Associates (Cross-Court) as lessee a term for years in land; Farrell and Cross-Court then mortgaged their interests in the land to Vermont Federal Savings and Loan Association (the Bank) as security for a construction loan. In 1977 Cross-Court with Farrell's consent assigned the leasehold to BTA as a non-assuming assignee (BTA took the leasehold subject to the first mortgage but did not incur liability on the 1973 promissory note). In conjunction with the agreement, Farrell and BTA joined in signing (1) a notarized document amending and restating the lease; (2) an agreement *inter se* to execute and deliver as security for a construction

loan sought by BTA, a second mortgage on the premises; and (3) the second mortgage deed. The amended and restated lease requires BTA to keep open a letter of credit in Farrell's favor as security for rents, and contains an augmented rents clause which takes BTA's gross receipts into account, but contains no language requiring BTA to pay either the 1973 note or the promissory note BTA executed in conjunction with the second mortgage deed and loan. (Farrell is a signatory of neither note). The second mortgage deed contains typed-in language as follows: "[Farrell] is executing this mortgage for the purpose of subordinating his ownership of the [premises] to the security interest being acquired hereby by [the Bank]."

Cross-Court defaulted on the 1973 note. BTA defaulted on the 1977 note. The letter of credit expired and was not renewed. Beginning in September 1978 BTA paid Farrell less rent each month than required by the lease. Farrell did not protest. Years went by. In May 1982 Farrell notified BTA that it was partially in arrears in rents for the previous 44 months. BTA tendered no cure. In July 1982 the Bank accelerated the 1973 and 1977 notes and subsequently instituted foreclosure proceedings against Farrell and BTA. On August 11, 1982, BTA filed for relief under Chapter 11 of the Code. Farrell brought an action in ejectment against BTA the following day.

On December 3, 1982, BTA filed a Plan of Reorganization (the Plan), which envisions BTA's business use of the premises generating cash flow sufficient to pay the mortgage debt, allowed creditors claims and operations expenses. As to Farrell, the Plan provides for monthly payment of current rents with arrears to be paid off over time. During the pendency of this proceeding, BTA has paid rent at the current annual rate demanded by Farrell in May 1982.

## DISCUSSION

Code section 362(d) provides that "... the court shall grant relief ... (1) for cause, including the lack of adequate protection of an interest in property ... or (2) if (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." In that BTA must retain possession of the leasehold as a business property if it is to consummate reorganization, the Court may not grant relief under subsection 362(d)(2).

Subsection 362(d)(1) contemplates compensatory protection for creditors interests imperilled by the debtor's performance. *Roslyn Savings Bank v. Comcoach Corp.,* 7 Collier Bankr.Cas.2d 1191, 1992, 698 F.2d 571 (2d Cir.1983). To obtain relief under the subsection Farrell must demonstrate that he has a creditor's interest which is not adequately protected. *Id.* at 1192, 1193, 698 F.2d 571. As mortgagor, Farrell has an equitable right of redemption should the Bank foreclose its mortgages on the premises. As lessor, Farrell has a reversion entitling him to injunctive relief or damages should waste to the premises occur. Neither of these interests is in issue today. However, Farrell as lessor also has a possessory interest in rents under the lease. As BTA is in arrears with respect to rents, Farrell has a creditor's interest which may entitle him to relief from stay "for cause."

The gist of Farrell's first line of argument is that the amount due under the mortgages exceeds the fair market value of the premises. The Court notes that the argument is wide of the mark. It is a fundamental principle of jurisprudence that courts grant relief where the law affords redress. A corollary of this principle is that to obtain a remedy one must assert one's own right; one cannot enforce the right of another. Since Farrell has mortgaged his reversion to the Bank, he may not be heard to complain that insufficient equity exists in the premises to protect the security interests of the Bank. Put simply, Farrell as mortgagor does not have standing to assert the interests of the Bank as mortgagee. It is understandable that Farrell does not wish to lose his land through foreclosure by the Bank; but it is not within the power of the Court to enlarge his rights under applicable non-bankruptcy law. In any event, it ap-

pears that there is equity in the premises sufficient to protect the Bank:

| ITEM | IN THOUSANDS | |
|---|---|---|
| value of premises as collateral (Bank's reliance figure) | 725 | |
| less: face amount of 1973 note | | 500 |
| face amount of 1977 note | | 50 |
| excess amount due to date of hearing | | 33 |
| | 583 | |
| Equity | 142 | |

There is an "equity cushion" even if Farrell's figures are used:

| ITEM | IN THOUSANDS |
|---|---|
| unitary value of leasehold and reversion if mortgages are foreclosed (Farrell's estimate) | 675 |
| less: amount due under mortgages as of date of hearing | 583 |
| Equity | 92 |

The gravamen of Farrell's second line of argument for relief from stay is that his rights to the arrearages in rents and to the reasonable value of BTA's use of the premises during the pendency of this proceeding are not adequately protected because BTA is not highly likely to accomplish rehabilitation. The Court observes that, at this early stage of the proceeding, BTA as debtor-in-possession has no burden to establish a high degree of likelihood that it can successfully reorganize. *In Re Bermec Corporation*, No. 71–B–291 (Bankr.S.D.N.Y. 1971) (Asa S. Herzog, Referee). With reorganization barely underway, it is sufficient that BTA demonstrate a reasonable possibility that it can effectively consummate the Plan. *In Re Bermec Corporation*, 445 F.2d 367 (2d Cir.1971); *In Re Yale Express System, Inc.*, 384 F.2d 990 (2d Cir.1967). However, Farrell goes on to suggest that BTA lacks any prospect of successful rehabilitation (his position is that the rents and arrears, the mortgage debt, the allowed creditors claims and BTA's operations expenses present, cumulatively, an 'insurmountable obstacle to BTA's effective reorganization). Farrell's argument is relevant in so far as it is pertinent to the protection of his interests under Code subsection 363(e). Under the subsection, BTA has the burden of proof on the issue of adequate protection. In the context of Farrell's challenge, BTA must establish that it has a reasonable possibility of rehabilitation.

As debtor-in-possession BTA has adopted new marketing and management programs and has published projections of income and expenses which if substantially realized will enable BTA to meet the mortgage debt, creditors claims, and operations expenses including rents and arrears. At the hearing, Farrell's cross-examination of BTA produced testimony that BTA had not met its projections in the interim between publication and the hearing; but it was not demonstrated that the projections over time would be substantially defective. Balanced against these plausible projections and BTA's best efforts to realize them are BTA's financial obligations, past, present and future. These obligations are not as impenetrable a barrier to reorganization as Farrell makes them out to be:

(1) BTA must pay for the reasonable value of its use of the premises during the pendency of this proceeding, such value presumptively corresponding to the post-petition rents due under the lease, *See, e.g., In Re Vermont Real Estate Investment Trust*, 25 B.R. 809, 811 (Bkrtcy.Vt.1982), but it is not a foregone conclusion that BTA as debtor-in-possession need pay, before assumption or rejection of the lease, the amounts, if any, due for the probationary period under the augmented rents clause of the lease. *See, Palmer v. Palmer*, 104 F.2d 161 (2d Cir.1939), *cert. den.*, 308 U.S. 590, 60 S.Ct. 120, 84 L.Ed. 494 (1939) ("... the [Debtor-in-Possession] need not pay the rent during the probationary period, and the court will hold off the lessor and force him to be content with the value of the use and occupancy meanwhile..."); 2 Collier on Bankr. ¶ 365.03[2] at 365–24 n. 30, and at 365–25 n. 30, 31 (1980).

(2) Although BTA is obligated to pay off the rental arrearages, BTA may assume the lease before doing so, if the trustee provides adequate assurance of prompt cure, Code § 365(b)(1)(A). However, under the circumstances of this case, where Farrell without protest

let the pre-petition arrears build up for 44 months, BTA may be able to avoid prompt cure following assumption of the lease; as a court of equity, the Bankruptcy Court is inclined to regard Farrell's injury here as self-inflicted. (Thus it was held that, although the bankruptcy court must consider the "balance of hurt" in fashioning relief, 2 Collier on Bankruptcy ¶ 362.07[1] at 362–49 (1980),

where the harm to the creditor is self-inflicted, the Court will not lift the stay based on a finding of greater relative harm. The Plaintiff willingly tolerated nonpayment for the four years prior to the bankruptcy filing. It is not the purpose of the Bankruptcy Code to "balance the harm" and afford a creditor better protection after the bankruptcy filing than it was content to endure prior to the filing.

*In Re Orlando Coals, Inc.,* 6 B.R. 721, 725 (Bkrtcy.S.D.W.Va.1980). The principal enunciated in *Orlando Coals* defuses Farrell's call for quick payment of arrears if and when BTA assumes the lease.

(3) As to adequate assurance of future performance of the lease under Code section 365(b)(1)(C), it appears that Farrell has waived his right to collateralized security for rents, in that until 1982 he did not demand reinstatement of the letter of credit BTA in 1977 opened as security for rents, which letter of credit Farrell knew had expired shortly after it expired in 1978. *Hughes et al. v. Farmers Nat. Bank and Fish,* 83 Vt. 386, 395, 76 A. 33 (1910) ("... [lessor] could exercise ... right [re term of lease] only by acting promptly ... two and three-forths years ... was too late for the right to be available."), *Van Dyke and Drew v. Cole,* 81 Vt. 379, 385, 395, 70 A. 593 (1908) ("... acts once acquiesced in ... cannot afterwards afford a ground for terminating the contract."); *See, In Re Boogaart of Florida, Inc.,* 5 Collier Bankr.Cas. 1441, 1446. *See, generally, In Re Sapolin Paints, Inc.,* 5 B.R. 412, 419 (Bkrtcy.E. D.N.Y.1980) and 2d Cir. cases cited.

(4) As of the date of the hearing state property taxes were current and not in default as Farrell has alleged.

(5) BTA has kept rent current since filing.

It is not unreasonable to expect that BTA, current in taxes and not under the gun to promptly cure arrearages in rents or to reopen a letter of credit in Farrell's favor as security for rents, may effectively consumate the Plan. As Farrell's argument for relief from stay, boiled down, was that his rights to receive rents was in inadequately protected because BTA could not demonstrate a reasonable possibility of rehabilitation and as BTA has demonstrated a reasonable possibility of rehabilitation, there is, therefore, no reason for the court to lift the stay.

As to Farrell's request for adequate protection, that protection is provided by BTA's prospects for rehabilitation and by the rents provisions of the Plan (rents as they fall due, arrears over time). Although that protection may be little consolation to Farrell as he contemplates the possibility that BTA may not consummate reorganization, and that he may therefore lose his land, such loss, if it happens, will be injury without harm, *injuria absque damno.* Farrell mortgaged his reversion as part and parcel of a business transaction entered into for consideration at arms length. Now he would prefer to be free of BTA's bargained-for rights. However, as Farrell is not entitled to relief from stay, and as his interest in rents is adequately protected, it is not within the power of the Bankruptcy Court to untie the shoes Farrell tied perhaps too tight.

### ORDER

In accordance with the foregoing,

IT IS ORDERED that

(1) the instant request for relief from stay is DENIED, and

(2) the instant request for adequate protection is DISMISSED.